UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CRESCENT TOWING  SALVAGE CO.,**                          **CIVIL ACTION**
**INC.  & COOPER CONSOLIDATED, INC.**

**VERSUS**                                                                          **NO. 05-4207**

**M/V CHIOS BEAUTY, her engines,**                          **SECTION "K"(5)**
**boilers, tackle, apparel, etc., IN REM**

### ORDER AND OPINION

Before the Court is the "Motion for New Trial and/or to Alter or Amend Judgment" filed on behalf of defendant M/V CHIOS BEAUTY, *in rem*, Chios Beauty Shipping & Trading, S.A., as claimant of the CHIOS BEAUTY, and Harbor Shipping & Trading, S.A., as the former manager or operator of the CHIOS BEAUTY.  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS  the motion in part and DENIES it in part as indicated hereinafter.

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, movers urge the Court to grant them a new trial or to alter or amend the judgment with respect to a number of the findings and conclusions announced by the Court in the Order and Opinion filed August 14, 2008 (Doc. 233) and the judgment entered August 15, 2008 (Doc. 234).  Defendants contend that:

- the Court erred in concluding that the master of the CHIOS BEAUTY was negligent in electing to proceed to New Orleans;
- the Court erred in disregarding the "Automatic Identification System ("AIS") evidence and expert testimony of Dr. Huzardo Eda;
- the Court erred in disregarding  "photographic evidence which confirms that much of the damage claimed by plaintiffs was caused by Hurricane Katrina rather than the CHIOS BEAUTY";

- the Court erred in accepting the $5,500,000.00 valuation for the CHIOS BEAUTY by plaintiffs' marine surveyor; and
- the Court erred in awarding post-judgment interest at 4% "rather than the mandatory rate, equal to the weekly average one-year constant maturity Treasury yield, provided for under 28 U.S.C. §1961."

Doc. 236-2.

## NEGLIGENCE OF THE MASTER OF THE *M/V CHIOS BEAUTY*

In its Order and Opinion filed August 14, 2008, the Court concluded that "the CHIOS BEAUTY should not have entered the Port of New Orleans with Hurricane Katrina predicted to strike New Orleans with at least the force of a Category 3 hurricane" and that Chios Beauty Shipping and Trading, S.A. (Chios Shipping), Harbor Shipping and Trading, S.A. ("Harbor Shipping), and Captain Nikolaos Ntouslazis "were negligent in failing to prudently monitor and interpret the available weather information concerning Hurricane Katrina and for sailing the vessel into the Port of New Orleans and directly into the path of Hurricane Katrina." Doc. 233, pgs. 6 and 23. Defendants contend that those conclusions constitute manifest error because they improperly second - guess the master's exercise of discretion in seeking refuge from catastrophic weather. The Court disagrees.

While the cases cited by defendants,[1] recognize that masters have considerable discretion in exercising their judgment as to vessel maneuvers with respect to storms and approaching storms, those cases are inapplicable here. In those cases the master made his decision concerning

---

[1] *United Geophysical Company v. Vela*, 231 F.2d 816, (5th Cir. 1956), *In Re: Steuart Transportation Company,* 435 F.Supp. 798 (E.D. Va. 1977); *Petition of Reading Co.*, 121 F.Supp. 808 (S.D. N.Y. 1954), *Esso Standard Oil, S.A. v. The S.S. GASBRAS SUL*, 387 F.2d. 573 (2nd Cir. 1968), *The IMOAN*, 67 F.2d 603 (2nd Cir. 1933), *Boudoin v. J. Ray McDermott & Company*, 176 F.Supp. 900 (W.D. La. 1959), *rev'd and remanded*, 281 F.2d 81 (5th Cir. 1960).

the course or position of the vessel either without access to relevant weather information or after the vessel was already in a position of peril with respect to the weather. Here however, on Saturday, August 27, 2005, when the vessel arrived at Southwest Pass at the mouth of the Mississippi River, the defendants had access to Hurricane Advisory 16 projecting that Hurricane Katrina, a Category 3 storm, would make a direct hit on New Orleans. Despite forewarning that a significant storm was headed to New Orleans and the availability of safe harbors to the west of the projected path of Hurricane Katrina, defendants and the master elected to have the CHIOS BEAUTY proceed to New Orleans. The Court's conclusion that the CHIOS BEAUTY should not have entered the Port of New Orleans given the projection that Hurricane Katrina would strike New Orleans is supported by the testimony of Captain Kelly Pulsifer, plaintiffs' expert, whose testimony was extremely persuasive and credited by the Court.

It is significant that when the decision to complete the voyage to New Orleans was made, the vessel was not in peril due to adverse weather conditions, as were the vessels in the cases relied upon by defendant. Additionally, the decision to proceed to New Orleans was not made under emergency conditions. There is no evidence that the decision to proceed to New Orleans was made in order to seek refuge from Hurricane Katrina, as opposed to proceeding to New Orleans because it was the previously scheduled destination for picking up the vessel's next cargo.

The Court's decision to fault the judgment of the master and the defendants is bolstered by the Court's conclusion that the weather information considered by Harbor Shipping and Captain Ntouslazis was grossly insufficient in scope and that their understanding of the weather information was inadequate. Neither the deposition of Captain Orfanos nor the testimony of Captain Ntouslazis contain any indication that either man critically evaluated the weather information available on

Saturday, August 27, 2005, to determine what options were available to the CHIOS BEAUTY and whether the Port of New Orleans offered a safe harbor.

It is well established that "[t]he master of a vessel caught in an emergency where he is forced to choose between risky alternatives, is entitled to a wide range of discretion in deciding what to do, provided it is a reasonable exercise of current standards of nautical knowledge and skill under the circumstances." *Esso Standard Oil, S.A. v. The S.S. GASBRAS SUL*, 387 F.2d at 580. Here however the CHIOS BEAUTY was not "caught in an emergency" and the choice of potential ports was not limited to "risky alternatives." Given the lack of emergency conditions on August 27, 2005 and the availability of safe harbors in the western Gulf of Mexico, the decision to sail the CHIOS BEAUTY straight into the path of at least a Category 3 hurricane in order to dock at a port projected to sustain a direct strike from the hurricane was patently unreasonable and constitutes an egregious abuse of the discretion vested in the master. The Court after carefully listening to the testimony of Captain Ntouslazis and observing his demeanor found his insouciance concerning the monitoring of a very dangerous hurricane stunningly inept.

Moreover, the Port of New Orleans is located in a narrow channel inherently susceptible to storm surge. Even though the Hurricane Advisory 16 did not contain any prediction regarding storm surge with respect to Louisiana, the exercise of sound judgment mandates that potential storm surge, a reasonably anticipated component of a Category 3 hurricane, be considered in assessing whether the Port of New Orleans provided a safe harbor for the CHIOS BEAUTY. This is particularly true given the lack of equipment aboard the CHIOS BEAUTY, i.e., the lack of self adjusting winches, to mitigate the inevitable effects of storm surge on the vessel. The Court's finding of negligence based on the decision to being the CHIOS BEAUTY into the Port of New Orleans is not a manifest

4

error of law, nor does it result in a manifest injustice.

## FINDINGS WITH RESPECT TO THE AIS SYSTEM

The Court conscientiously considered the AIS data presented at trial and the testimony of Dr. Haruzo Eda, and for the reasons stated in the August 14, 2008 Order and Opinion concluded that the AIS data was not the best evidence of the movements of the various relevant vessels after the breakaway of the CHIOS BEAUTY. Defendants have presented no additional argument which persuades the Court to abandon its previous findings with respect to the AIS data and Dr. Eda's testimony.

Additionally, at trial, the Court had the opportunity to see the witnesses, including John Richardson and Vic Digiorgio, and observe their manner and expression contemporaneously with their testimony. The Court found the testimony of John Richardson and Vic Digiorgio credible, as noted in the August 14, 2008, Order and Opinion, and declines to reverse its findings concerning the credibility of that testimony. That credible testimony, as well as the testimony of Paroussis Konstantinos, the Chief Engineer on the CHIOS BEAUTY and photographs of the damage sustained by the MANDY establish that an allision occurred between the CHIOS BEAUTY and the MANDY.

## SEGREGATION OF DAMAGES

Defendants urge that the Court erred in attributing all of the damages sustained by the Crescent facility to the allision with the CHIOS BEAUTY. No extensive analysis of this contention is necessary. The Court's conclusion concerning the cause of the damages sustained by the Crescent facility is not based on a manifest error of law or fact.

VALUE OF THE CHIOS BEAUTY

Defendants urge that the Court erred in crediting Captain Paul Strouse's testimony valuing the CHIOS BEAUTY at $5,500,000.00 and contend that the proper value of the vessel was $3,750,000.00, immediately after the casualty. Defendants criticize Larry Strouse's testimony contending that he failed to consider the following critical facts which would reduce the vessel's value: 1) the grounded status of the vessel on August 29, 2005; 2) the expenditure of $1,300,000.00 to refloat the CHIOS BEAUTY after Hurricane Katrina; 3) the expenditure of $1,800,000.00 for repairs and steel work on the CHIOS BEAUTY to obtain a sale price of $5,400,000.00; 4) the September 29, 2006 sale of the M/V JAG RATNA for $3,250,000.00; and 5) the fact that the CHIOS BEAUTY was subject to a 24-month charter on what was a rising market. Additionally, defendants challenge Captain Strouse's valuation because he had "little or no prior experience in the appraisal or valuation of large bulk carriers such as the CHIOS BEAUTY."

That Mr. Strouse had not previously testified in court as to a valuation or appraisal for a large bulk carrier does not *per se* diminish the efficacy of his testimony, nor does it do so in this case. The Court accepted Captain Strouse's valuation based on his sound methodology.

Defendants concede that the proper time for valuing the vessel is September 12, 2005, the day she was released after being arrested by the U.S. Marshal in this in rem proceeding. Doc. 223, p. 7-8. Considering that concession, the fact that the vessel was aground on August 29, 2008, and that $1,300,000.00 had to be expended to refloat her following the hurricane is immaterial in determining the value of the vessel. The vessel was afloat when arrested by plaintiffs and released from seizure.

Although Captain Strouse established the value of the vessel as of August 29, 2005, there

6

is no evidence that given the methodology he employed to determine the value of the vessel that he would have assigned the vessel a different value on September 12, 2005. Captain Strouse used the

sales comparison approach to determine the value of the vessel, specifically the sale of the M/V C. HARMONY in July 2005 for $5.5 million. Considering the similarities between the C. HARMONY and the CHIOS BEAUTY, i.e., same year of construction, and virtually identical dead weight tonnage, the Court is convinced that sale accurately reflects the value of the CHIOS BEAUTY.

Defendants contend that the sale of the M/V JAG RATNA on September 29, 2005 more accurately reflects the value of the CHIOS BEAUTY. However, because the sale of the JAG RATNA occurred after the arrest and release of the CHIOS BEAUTY, the Court does not consider that sale to be persuasive regarding the value of the CHIOS BEAUTY at the time of her release from arrest.

Defendants also criticize Captain Strouse's testimony because he failed to consider the negative effect that the vessel's twenty four (24) month charter in a rising market would have on the value of the vessel. The Court considers the evidence on this factor to be too vague and speculative to support a diminution of the value of the vessel based on that factor.

## RATE OF POST JUDGMENT INTEREST

Defendants are correct that 28 U.S.C. §1961 provides that post-judgment interest is payable "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of judgment." Therefore, defendants' motion is granted to the extent that it

seeks to amend the judgment with respect to the rate of post-judgment interest. The judgment will be amended to provide for post-judgment interest at the rate provided in 28 U.S.C. §1961.

New Orleans, Louisiana, this 16th day of December, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE